IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

**WILKE WINDOW & DOOR COMPANY,**

    **Plaintiff,**

**ILLINOIS MINE SUBSIDENCE
INSURANCE FUND,**

    **Intervening Plaintiff,**

**v.**

**PEABODY COAL COMPANY,**

    **Defendant.**                                                   **Case No. 05-cv-371-DRH**

## MEMORANDUM & ORDER

**HERNDON, District Judge:**

### I. INTRODUCTION

In this case, Plaintiff has filed a suit for damages to its warehouse allegedly caused by mine subsidence. Pending before the Court are summary judgment motions, filed by the parties. Plaintiff Wilke Window & Door Company ("Wilke") moves for a partial summary judgment (Doc. 42) in its favor on liability regarding Count I of its Complaint (Doc. 2), which states a claim of negligence. Intervening plaintiff Illinois Mine Subsidence Insurance Fund (the "Fund"), moves for summary judgment (Doc. 42) in its favor regarding its Intervening Complaint (Doc. 23) on both liability and damages. Defendant Peabody Coal Company ("Peabody"), has also moved for summary judgment (Doc. 40) in its favor on the

grounds that Plaintiffs' claims are barred. Thus, the Court must first look at the issue of whether any or all of Plaintiffs' claims are barred. If so, the Court need not delve further. However, if Peabody's affirmative defenses do not prevail, the Court must then turn to the issue of liability and finally, damages.

## II. BACKGROUND

Wilke owns property in St. Clair County, Illinois (the "Wilke Property") and on this property, it built a large warehouse to use for its business. It is undisputed that the Wilke Property is located above the St. Ellen mine, which is an underground coal mine encompassing more than 3800 acres. The parties do not dispute that the St. Ellen mine is what is known as a "room and pillar" mine. As explained by the briefs, room and pillar mining is a method of removing coal from underground; the mined out areas thus become the "rooms." Yet, this mining methodology requires some of the coal to remain. "Pillars" must be formed from remaining coal and rock in order to provide the primary and permanent support for these rooms and ultimately, the overlying strata, including the surface of the earth above the mine. Generally, these pillars are quite large, measuring at least 30 feet square. The ultimate design of a room and pillar mine, therefore, depends substantially upon the number, size and placement of the pillars. Secondary support, such as timber, cribbing, bolts, blocking and backfill material, was also likely installed in the St. Ellen mine.

Mine subsidence is the effect resulting from the failure of a pillar or series of pillars over time, caused by factors such as deterioration of pillars, design

defects or certain geologic occurrences. When the overlying strata collapses due to mine subsidence, the surface realty above the mine can also subside, causing damages. Also undisputed by the parties is the fact that the mining affecting the Wilke property took place no later than 1960, as that is the year Peabody ceased mining the St. Ellen mine. The mine was then closed and abandoned.

Wilke alleges it first noticed its warehouse seemed to have structural damage in late November 2000. Wilke filed a claim with its insurance company, Federated, for this suspected mine subsidence damage. The Fund, created by the State of Illinois to provide reinsurance for certain mine subsidence losses to properties located in-state, received Wilke's claim, forwarded by Federated. During its investigation of Wilke's claim, the Fund geologist concluded that mine subsidence of the St. Ellen mine caused damage to the Wilke Property and warehouse. Due to this finding, the Fund paid the maximum amount of reinsurance for Wilke's claim: $350,000.00. However, Plaintiffs assert that the actual damage substantially exceeds this amount.

Wilke then filed suit against Peabody in state court, on April 21, 2005, alleging two Counts: Count I for negligence for Peabody's failure to provide adequate support for the land surface above the St. Ellen mine and Count II pursuant to the Illinois Surface Coal Mining Land Conservation and Reclamation Act ("SCMLCRA"), **225 ILL. COMP. STAT. 720/4.02**.[1] On the basis of diversity jurisdiction, **28 U.S.C.**

---

[1] Peabody also brought this suit against other Defendants, but has since voluntarily dismissed them, leaving Peabody as the only remaining defendant.

**§ 1332**, Defendant timely removed Wilke's suit; Wilke did not pursue a remand. In October 2005, the Fund moved to intervene (Doc. 14) as an additional plaintiff in this matter, pursuant to **215 ILL. COMP. STAT. 5/815.1**, claiming it is "subrogated to the right of Wilke against Defendant and has the legal right to sue in its own name for its loss it paid relating to mine subsidence damage to the warehouse . . ." (Doc. 23, ¶ 14). In other words, the Fund seeks to recover from Peabody the $350,000.00 it paid to Wilke for its mine subsidence claim, pursuant to the Fund's reinsurance agreement with Wilke's insurer, Federated.

As previously stated in this Order, Wilke and the Fund have filed a joint Motion for Summary Judgment (Doc. 42) and Peabody has filed its own Motion for Summary Judgment (Doc. 40). Both Motions have been fully briefed and are ripe for resolution.

### III.  LEGAL STANDARD

Summary judgment is appropriate under the Federal Rules of Civil Procedure when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." **FED. R. CIV. P. 56(c);** *Celotex Corp. v. Catrett*, **477 U.S. 317, 322 (1986)**. The movant bears the burden of establishing the absence of factual issues and entitlement to judgment as a matter of law. ***Wollin v. Gondert*, 192 F.3d 616, 621-22 (7th Cir. 1999)**. The Court must consider the entire record, drawing

reasonable inferences and resolving factual disputes in favor of the non-movant. ***Schneiker v. Fortis Ins. Co.*, 200 F.3d 1055, 1057 (7th Cir. 2000); *Baron v. City of Highland Park*, 195 F.3d 333, 337-38 (7th Cir. 1999)**.

## IV. <u>DISCUSSION</u>

Both summary judgment motions, although premised upon different legal grounds, interconnect such that an argument advanced by one side in favor of its motion becomes its defense against granting the other side's motion and vice-versa (i.e., Peabody, in its Response, also adopts its own Motion for Summary Judgment and supporting memorandum as its opposition to Plaintiffs' Motion for Summary Judgment). Yet, because Peabody's asserted grounds for summary judgment are largely affirmative defenses which, if prevailing, would serve to moot Plaintiffs' grounds for summary judgment, logic dictates the Court first address Peabody's Motion (Doc. 40).

**A.    Peabody's Motion for Summary Judgment**

Peabody asserts it is entitled to summary judgment in its favor as a matter of law, as it believes Plaintiffs' entire suit is barred by **735 ILL. COMP. STAT. 5/13-214(b)**, commonly known as Illinois' "Construction Statute of Repose" (doc. 41, pp. 6-12).[2] Should the Court find this argument lacks merit, Peabody advances three additional bases of why the entire suit is barred as a matter of law. First, Peabody argues that the Fund's suit (not Wilke's) is barred by the doctrine of *res*

---

[2] As this case is grounded in diversity, the Court will follow the substantive state law of Illinois, pursuant to the ***Erie*** doctrine.

*judicata* and collateral estoppel (*id.* at 13-16). Second, Peabody argues Wilke's claims are barred by the four-year statute of limitations period found in the same statutory section as the Construction Statute of Repose, in a separate subsection: **735 ILL. COMP. STAT. 5/13-214(a)** (*id.* at 16-18). Lastly, Peabody argues Wilke cannot state a valid cause of action under SCMLCRA (Count II of Wilke's Complaint), as the Act was not even enacted until June 1, 1980 and is not intended to be retroactive. Thus, SCMLCRA, Peabody argues, should not apply in this matter as the mining events occurred no later than 1960 – over 20 years before the enactment of SCMLCRA (*id.* at 18-19).

### 1. Whether the Construction Statute of Repose Bars Plaintiffs' Claims

Peabody argues Plaintiffs' entire suit is barred by the Construction Statute of Repose, codified in **735 ILL. COMP. STAT. 5/13-214(b)**, which states, in pertinent part:

> No action based upon tort, contract or otherwise may be brought against any person for an act or omission of such person in the design, planning, supervision, observation or management of construction, or construction of an improvement to real property after 10 years have elapsed from the time of such act or omission.

As there is no real dispute of fact that the mining affecting the Wilke property occurred no later than 1960, the question becomes whether the Construction Statute of Repose applies to this case. The question of application, then, turns on whether the coal mine can be deemed "construction of an improvement to real property."

There is only a single case seemingly on-point with the material facts

and issues present in this suit: ***Illinois Mine Subsidence Insurance Fund v. Peabody Coal Co.*, 282 F. Supp. 2d 1078 (C.D. Ill. 2005)(Mills, J.)** (hereinafter, "***Fund v. Peabody***"). In ***Fund v. Peabody***, the Fund brought suit as subrogee seeking damages for reinsurance reimbursements it paid for mine subsidence damage claims made on several different properties. The case involved certain properties located in St. Clair County, Illinois, which had been undermined by the St. Ellen mine – the same coal mine that is at issue in this suit. On various cross motions for summary judgment, Judge Mills examined the identical issue of whether the Illinois Construction Statute of Response applied to underground "room and pillar" coal mines. The parties, two of which are currently parties to the present suit,[3] extensively briefed this issue, largely making the same arguments also made in this suit. Thus, the Central District analyzed all of the applicable Illinois case law that the parties also now cite and advocate their interpretations thereof.

### a.     Determining Precedent in a Diversity Case

Plaintiffs argue that ***Fund v. Peabody*** should not constitute binding precedent; instead, this Court, sitting in diversity, is bound to follow Illinois law when determining the issues. Continuing, as this is a case of first impression in Illinois, Plaintiffs ask the Court to conduct its own, independent analysis of Illinois law. Certainly, the Court never views an opinion by another federal district court as

---

[3] The Court observes the Fund's participation in this case, as well as ***Fund v. Peabody***, is in its capacity as subrogee, which is, additionally, the basis of its argument opposing Peabody's *res judicata* grounds for summary judgment.

binding precedent, even if that district court is within the Seventh Circuit.  However, the Court may, at times, find a court's rationale insightful, thereby electing to adopt the same or similar line of reasoning.  Further, when determining an issue under state law, as federal courts with diversity jurisdiction often do, the holding of the highest court within that state will be followed, if it exists.  ***Republic Tobacco Co. v. N. Atlantic Trading Co.*, 381 F.3d 717, 731 (7th Cir. 2004)("[A]s a federal court sitting in diversity, we are obligated to apply Illinois law as announced by the Illinois Supreme Court.")**.  When the Illinois Supreme Court has yet to decide the issue presented in a diversity case, a federal court should look to Illinois appellate court opinions, but only if they represent a credible prediction of how the Illinois Supreme Court would likely rule on the issue.  ***Adams v. Catrambone*, 359 F.3d 858, 862 (7th Cir. 2004)**.  Lastly, a ruling on the issue by the Seventh Circuit, attempting to predict how the Illinois Supreme Court would rule, is binding on this Court, unless a later conflicting opinion is issued by the Illinois Supreme Court or subsequent Illinois appellate court opinions indicate the Seventh Circuit's prediction was likely inaccurate.  ***See Herriott v. Allied-Signal, Inc.*, 801 F. Supp. 52, 54-5 (N.D. Ill. 1992)(citation omitted)**.

      Presently, the Illinois Supreme Court has not yet decided the issue of whether an underground coal mine constitutes "construction of an improvement to real property" for purposes of the Illinois Construction Statute of Response  In fact, there are also no existing Illinois appellate court or even Seventh Circuit opinions

deciding the particular issue in this suit. Rather, ***Fund v. Peabody*** is the only case which has decided this issue, using Illinois law, and it is not binding upon this Court. Therefore, the Court will analyze how Illinois courts have defined "improvement to real property," in order to apply this definition in determining whether an underground coal mine can properly be deemed as such.

### b.     Illinois Law Defining "Improvement to Real Property"

In the Illinois cases cited by the parties, the definition of "improvement to real property" is "an addition to real property amounting to more than mere repair or replacement and which substantially enhances the value of the property." ***Continental Ins. Co. v. Walsh Construction Co. of Ill.***, 171 Ill. App. 3d 135, 140 524 N.E.2d 1131, 1135 (Ill. App. Ct. 1st Dist. 1988)(citing ***Calumet Country Club v. Roberts Environmental Control Corp.***, 136 Ill. App. 3d 610, 613, 483 N.E.2d 613, 616 (Ill. App. Ct. 1st Dist. 1985), ***disagreed with on other grounds by Allstate Ins. Co. v. Menards, Inc.***, 202 Ill. 2d 586, 782 N.E.2d 258 (Ill. 2002)). The definition of "improvement" was then somewhat expanded:

> A valuable addition made to property (usually real estate) or an amelioration in its condition, amounting to more than mere repairs or replacement, costing labor or capital, and intended to enhance its value, beauty or utility or to adapt it for new or further purposes.

***Cross v. Ainsworth Seed Co.***, 199 Ill. App. 3d 910, 921, 557 N.E.2d 906, 913 (Ill. App. Ct. 4th Dist. 1990)(quoting ***Hilliard v. Lummus Co.***, 834 F.2d 1352, 1354 n.3 (7th Cir. 1987)(quoting BLACK'S LAW DICTIONARY 682 (5th ed. 1979)); *see also Billman v. Crown-Trygg Corp.*, 205 Ill. App. 3d 916, 921, 563 N.E.2d 903, 906 (Ill. App. Ct. 1st Dist. 1990).

In light of this expanded definition of "improvement," the Illinois appellate courts found that an improvement "need not only enhance the 'value' of property," it could also "enhance the beauty or utility of that property or adopt it to different or further purposes." ***Billman*, 205 Ill. App. 3d at 921, 563 N.E.2d at 906**. Approximately two years later and in the most recent of its opinions on the definition of improvement, the Illinois Supreme Court first stated that the issue of "[w]hether an item constitutes an 'improvement to real property' is a question of law . . ." with its "resolution . . . grounded in fact." ***St. Louis v. Rockwell Graphic Sys., Inc.*, 153 Ill.2d 1, 3, 605 N.E.2d 555, 556 (Ill. 1992)**. The Illinois Supreme Court also noted that defining the parameters of "improvements to real property," was a matter of first impression. ***Id.*** First, as the Seventh Circuit had done in ***Hilliard***, the Illinois Supreme Court looked to the Black's law dictionary definition of "improvement." ***Id.* at 4, 605 N.E.2d at 556**. Also adopted from the Seventh Circuit's ***Hilliard*** decision were the relevant criteria to determine what constitutes an "improvement to real property": (1) whether the addition was meant to be permanent or temporary, (2) whether it became an integral component of the overall system, (3) whether the value of the property was increased, and (4) whether the use of the property was enhanced. ***Id.* at 5, 605 N.E.2d at 556 (citing *Hilliard*, 834 F.2d at 1354-58 and collecting cases)**.

Plaintiffs advocate a subsequent case opinion issued by the First District Appellate Court of Illinois: ***Bank of Ravenswood v. City of Chicago*, 307 Ill. App.**

**3d 161, 717 N.E.2d 478 (1999)**. In *Ravenswood*, the First District cited the expanded definition of "improvement," as first applied by an Illinois appellate court in *Cross*, as well as relevant criteria for determining what constitutes an improvement, set forth by the Illinois Supreme Court in *St. Louis*. **Ravenswood, 307 Ill. App. 3d at 166, 717 N.E.2d at 483**. The reasons Plaintiffs favor the *Ravenswood* opinion is because, in determining whether construction of an underground subway system constituted an improvement for purposes of the Construction Statute of Response, the First District appears to have added an additional element to the definition: that the item also relate "to the use or enjoyment of the real property located above it such that its presence could be considered an improvement." *Id*. **at 167, 717 N.E.2d at 483 (distinguishing the subway system at issue from an underground sewer system or construction work on a traffic intersection)**. This additional element, Plaintiffs argue, supports their argument that the St. Ellen mine does *not* constitute an improvement to real property, as it has absolutely no relation to the use or enjoyment of the Wilke property and warehouse situated on the surface of the earth above the underground coal mine.

Conversely, Peabody asserts that *Ravenswood* is a "renegade" case which adds a limitation that "cannot be harmonized with the definitional criteria" applied by previous Illinois case opinions determining the issue of what constitutes an "improvement" for the purposes of the Construction Statute of Repose (Doc. 49, p. 5). Indeed, in *Fund v. Peabody*, Judge Mills found *Ravenswood* to be an

anomaly, and therefore, unpersuasive:

> As Peabody alleges, it appears that **Bank of Ravenswood** is the only case which suggests that whether the structure has any relation to the use or enjoyment of the property above it is an important consideration. Moreover, that case seems to place an inordinate emphasis on whether the value was enhanced, which is just one of several factors. ***See Herriott v. Allied-Signal, Inc.*, 801 F. Supp. 52, 56 (N.D. Ill. 1992)** ("[U]nder this expanded definition, an improvement is not limited to that which 'substantially enhances' the value of the property. Rather, an improvement may also enhance the beauty or utility of that property or adapt the property to different or further purposes.").

**383 F. Supp. 2d at 1097**.

Examining ***Ravenswood***, it seems as though this additional requirement related "use or enjoyment" requirement for something to be considered an "improvement" was merely the First District's explanation of why it did not consider the subway system to meet the relevant definitional criteria set forth by the Illinois Supreme Court in ***St. Louis***. ***Ravenswood*, 307 Ill. App. 3d at 167, 717 N.E.2d at 483 ("[W]hether the subway was an integral part of the function of the residential townhomes and enhanced the overall value.")**. Therefore, the Court does not believe it to be an actual expansion of the definition of "improvement." Instead, the First District was attempting to analyze what constitutes "value enhancement." The additional fact that ***Ravenswood*** offers no authoritative support or other rationale for adding this additional definitive requirement, coupled with the insight provided by Judge Mills in ***Fund v. Peabody***, allows the Court to find ample leeway to reject Plaintiffs' argument that ***Ravenswood*** expands the definition of

"improvement" under Illinois law. In other words, the Court will conservatively proceed to analyze whether the construction of the St. Ellen mine is an "improvement" for purposes of the Illinois Construction Statute of Repose, using the definition provided by the Illinois Supreme Court in ***St. Louis***.

### c.     Whether an Underground Coal Mine is an "Improvement"

The issue of whether the St. Ellen mine, an underground room and pillar coal mine, can be considered "construction of an improvement to real property" for purposes of the Illinois Construction Statute of Repose will be analyzed in accord with the definition of improvement, as recognized by the Illinois Supreme Court in ***St. Louis***. A definitional interpretation regarding coal mines has not yet been decided by the Illinois courts, therefore, in its own analysis, the Court will heed the findings in ***Fund v. Peabody***, as it is concentric with this case.

First, the Court notes that the parties argue whether building an underground coal mine is actually considered "construction," or, as Plaintiffs suggest, is really more of an excavation and removal of coal to create the hollowed out rooms and remaining pillar structures of the mine. "Construction" is defined as "the process, act or manner of constructing something." **MERRIAM WEBSTER'S COLLEGIATE DICTIONARY 248 (10th ed. 1997)**. Likewise, the applicable definition of "construct" is "to make or form by combining or arranging parts or elements." **MERRIAM WEBSTER'S COLLEGIATE DICTIONARY 248 (10th ed. 1997)(listing the term "build" as synonymous cross-reference)**. Lastly, the verb "form," is defined as to

"shape or mold into a certain state . . . ." **MERRIAM WEBSTER'S COLLEGIATE DICTIONARY 458 (10th ed. 1997)**. As there is nothing to indicate that the plain language meaning of "construction" should *not* be applied to the Construction Statute of Repose, the Court finds the creation of a room and pillar mine to sufficiently fit within the plain language meaning of "construction." Therefore, the analysis will continue.

The Court also finds that the St. Ellen mine would constitute a "valuable addition" to the real property. Agreeing with Peabody, in ***Fund v. Peabody***, the Central District found that for at least a brief period in time near the construction of the mine, the existence of mineral rights enhanced the real property's value for, at a minimum, "the surface owners who conveyed the mineral interests at the time of the mining." **383 F. Supp. 2d at 1096 (citing as an example, *Manning v. Frazier*, 96 Ill. 279, 1880 WL 10104 (1880))**. Quite obviously, the construction of the St. Ellen mine also amounted to more than a mere repair or replacement – this is not really disputed among the parties. Also, it is apparent labor and capital were expended in the construction of the St. Ellen mine. Thus, the Court must finally consider whether it was intended to enhance the value, beauty or utility or to adopt the real property for new or further purposes. As ***Fund v. Peabody*** observed, "there is no question that the construction of an underground mine adds to the utility of the property and adapts it for further or additional purposes." ***Id.*** Prior to its construction, the real property could not be mined for coal whereas afterwards, the

surface remained useful for a variety of purposes, while the underground could was then adapted for coal mining.

This finding also aligns with the "relevant criteria" to determine what constitutes an "improvement to real property." **See St. Louis, 153 Ill.2d at 4-5, 605 N.E.2d at 556**. First, the construction of the St. Ellen mine was the "overall system," and it could fairly be stated that the rooms and pillars were also "integral components," necessary for providing the coal mine's overall support structure. Second, although no longer in use, the coal mine and its support system (pillars) were intended to be permanent rather than temporary; "intended to last beyond the duration of the actual mining." **Fund v. Peabody, 383 F. Supp. 2d at 1096**. Mine subsidence, as previously explained, only occurs as the result of the unintentional or unforeseen deterioration or failure of the structures. Third, at one point in time, the value of the property was increased for the owner with interests in the existing mineral rights: the owner(s) generally received either a lump sum payment by the purchaser of the mineral interests or periodic royalties during the construction and operation of the coal mining.[4] Lastly, the use of the property was enhanced because it could thereafter be mined for minerals necessary as a source of energy.

The Court finds that the construction of the St. Ellen mine constitutes "construction of an improvement to real property," for purposes of the Construction

---

[4] As an additional point, the Court has not found binding authority indicating a requisite certain temporal duration for which the value of the real property must remain enhanced due to the construction of the improvement.

Statute of Repose. Therefore, as there is no dispute the construction occurred more than 10 years prior to the filing of this suit, Plaintiffs' claims are barred by the Construction Statute of Repose found in **735 ILL. COMP. STAT. 5/13-214(b)**. Peabody's Motion for Summary Judgment (Doc. 40) must prevail. Peabody, in its Motion (Doc. 40), also requested also requested an oral argument. Quite obviously, the Court deems this unnecessary and denies the request.

### B.   Plaintiffs' Motion for Summary Judgment

Due to the Court's finding that Plaintiffs' claims are barred by the Construction Statute of Repose, there is no need to address the grounds for their joint Motion for Summary Judgment (Doc. 42), nor is there need to address Peabody's additional grounds for summary judgment.

### V.   CONCLUSION

Finding that the Illinois Construction Statute of Repose, codified in **735 ILL. COMP. STAT. 5/13-214(b)**, bars all of Plaintiffs' claims in this matter, Peabody's Motion for Summary Judgment (Doc. 40) is **GRANTED**. Accordingly, Plaintiffs' Motion for Summary Judgment and Motion for Partial Summary Judgment (Doc. 42) are hereby **DENIED AS MOOT**. The Clerk will enter summary judgment in favor of defendant Peabody and against plaintiffs Wilke and the Fund.

**IT IS SO ORDERED**.

Signed this 27th day of March, 2007.

/s/       David  RHerndon
**United States District Judge**