IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

AMBROSIA LAND INVESTMENTS, LLC, f/k/a
WILKE WINDOW & DOOR COMPANY, INC.,

    Plaintiff,

ILLINOIS MINE SUBSIDENCE INSURANCE
FUND,

    Intervening Plaintiff,

v.

HERITAGE COAL COMPANY, LLC,
f/k/a PEABODY COAL COMPANY, LLC,

    Defendant.                                                 Case No. 05-cv-371-DRH

**MEMORANDUM & ORDER**

**HERNDON, Chief Judge:**

### I. INTRODUCTION

Before the Court is the intervening plaintiff Illinois Mine Subsidence Insurance Fund's (the "Fund") Motion for Summary Judgment (Doc. 89), and defendant Heritage Coal Company, LLC's ("Heritage") Renewed Motion for Summary Judgment on Grounds Not Yet Decided (Doc. 91).

This case stems from mine subsidence damage to a warehouse, owned by Wilke Window & Door Company, Inc. ("Wilke"), the original Plaintiff in this action. The warehouse is located in St. Clair County, Illinois, above the St. Ellen mine, which is an underground coal mine encompassing more than 3,800 acres. Wilke filed a claim with its insurer, Federated Mutual Insurance Company,

for suspected mine subsidence damage. Ultimately, Wilke received $350,000.00 from Federated (which was the limits of the policy) as partial payment for the warehouse damage, although the damages claimed were substantially in excess of this amount. Thus, Wilke filed suit against Peabody Coal Company ("Peabody"), the original Defendant in this case, as Peabody was responsible for the mining operations, bringing two Counts: Count I for negligence for Peabody's failure to provide adequate support for the land surface above the St. Ellen mine and Count II pursuant to the Illinois Surface Coal Mining Land Conservation and Reclamation Act, **225 Ill. Comp. Stat. 720/4.02**. This case was removed here on the basis of diversity jurisdiction, **28 U.S.C. § 1332**.

The Fund was created by the State of Illinois to provide reinsurance for certain mine subsidence losses to properties located in-state. Pursuant to a reinsurance agreement between Federated and the Fund, Federated made a claim to the Fund for reimbursement of the amount it had paid out to Wilke. As reinsurer for Federated, because it was determined by a Fund geologist that mine subsidence had, in fact, caused damage to the warehouse, the Fund reimbursed Federated the $350,000.00 it paid to Wilke,. The Fund moved to intervene as a Plaintiff in this suit, claiming it had a subrogation interest in the $350,000.00 it reimbursed to Federated, who ultimately paid the amount to Wilke. Therefore, the Fund concluded it had a subrogation right to at least a portion of the damages claimed by Wilke. The Court allowed the Fund to become an Intervening Plaintiff in this matter.

This case was initially decided upon cross summary judgment motions, filed by both Wilke and Peabody. This Court ultimately granted summary judgment in favor of Peabody and against Wilke, finding that Wilke's claims were barred by the Construction Statute of Repose, **735 ILL. COMP. STAT. 5/13-214(b)** (*see* Doc. 53). Wilke appealed this decision to the Seventh Circuit of Appeals. During that time, the Seventh Circuit approved the substitution of Ambrosia Land Investments, LLC ("Ambrosia"), for Wilke as Plaintiff and further approved the substitution of Heritage Coal Company, LLC ("Heritage"), for Peabody as Defendant in this suit.

On appeal, the Seventh Circuit found that because Defendant was sued in its capacity as the landowner of the mine and not as a party engaging in construction-related activities, the Construction Statute of Repose did not bar Plaintiff's claims. As such, the Seventh Circuit determined that summary judgment was improper, thereby reversing and remanding for further proceedings consistent with its opinion. ***Ambrosia Land Investments, LLC v. Peabody Coal Co.*, 521 F.3d 778, 786 (7th Cir. 2008)**. Several months after the case was remanded back to this Court, defendant Heritage and intervening plaintiff the Fund each filed their respective motions for summary judgment. Also around that time, plaintiff Ambrosia settled its claims with defendant Heritage (*see* Docs. 101 & 103). Therefore, the only remaining claim in this suit is the Fund's subrogated claim against defendant Heritage for mine subsidence (*see* Doc. 23). The Fund believes that no remaining disputes of material fact exist, and that it

should be granted summary judgment for the $350,000.00 it reimbursed Federated for the amount it paid to Wilke (now Ambrosia) due to mine subsidence damage. Heritage also moves for summary judgment on grounds it raised in its original summary judgment motion, but were not addressed by the Court because of its finding regarding the applicability of the Construction Statute of Repose. Thus, Heritage's remaining arguments are that the Fund's claims should be barred by the doctrines of res judicata and collateral estoppel. Oral argument has been requested, but as the issues have been sufficiently briefed on paper by the Parties, the Court finds no need to conduct a hearing. For reasons discussed herein, the Court finds in favor of the Fund.

## II. <u>DISCUSSION</u>

### A. Legal Standard

Summary judgment is appropriate under the Federal Rules of Civil Procedure when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." **FED. R. CIV. P. 56(c);** ***Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)**. The movant bears the burden of establishing the absence of factual issues and entitlement to judgment as a matter of law. ***Wollin v. Gondert*, 192 F.3d 616, 621-22 (7th Cir. 1999)**. The Court must consider the entire record, drawing reasonable inferences and resolving factual disputes in favor of the non-movant. ***Schneiker v. Fortis Ins. Co.*, 200 F.3d 1055, 1057**

(7th Cir. 2000); *Baron v. City of Highland Park*, 195 F.3d 333, 337-38 (7th Cir. 1999).

B. Analysis

The Fund moves for summary judgment based upon the argument that there exists a *prima facie* case that Plaintiff's warehouse damage was caused by mine subsidence (Doc. 90, pp. 5-6). The Fund reimbursed Plaintiff's insurer, Federated, for the $350,000.00 it paid to Plaintiff on its claim for mine subsidence. The reimbursement was authorized upon a finding made by Fund geologist that the warehouse damage was caused by mine subsidence. Peabody was the last entity to operate the St. Ellen Mine (it has been closed since 1960). Defendant Heritage has assumed the assets and liabilities of Peabody, who previously assumed them from Perry Coal Company, who operated the St. Ellen Mine prior to Peabody. Thus, the Fund believes it has established a *prima facie* case that the mine subsidence damage to Ambrosia's warehouse was caused by mining and that Heritage is liable for the resulting damage in the amount it has paid to Federated pursuant to the reinsurance agreement, which was ultimately paid to Ambrosia. On the other hand, Heritage believes that it should prevail on summary judgment, arguing that the Fund's intervening claim against it is precluded by either the doctrine of res judiciata or collateral estoppel. Heritage's summary judgment arguments will be examined first, as it presents an affirmative defense as the basis for its Motion, aiming to bar the Court from reaching the merits of the Fund's claim.

### 1. Heritage's Renewed Motion for Summary Judgment

Heritage argues that two different cases serve to preclude the Fund's claims against it in the instant case. The first case, which Heritage calls "Fund Litigation I," was brought in federal district court for the Central District of Illinois, entitled ***Illinois Mine Subsidence Ins. Fund v. Peabody Coal Co.*, 383 F. Supp. 2d 1078 (C.D. Ill. 2005)**. The Court considered this case in its original Order (Doc. 53), granting Defendant summary judgment based on the Construction Statute of Repose. As stated in the Court's March 27, 2007 Order:

> In [Fund Litigation I], the Fund brought suit as subrogee seeking damages for reinsurance reimbursements it paid for mine subsidence damage claims made on several different properties. The case involved certain properties located in St. Clair County, Illinois, which had been undermined by the St. Ellen mine – the same coal mine that is at issue in this suit. On various cross motions for summary judgment, Judge Mills examined the identical issue of whether the Illinois Construction Statute of Response applied to underground "room and pillar" coal mines. The parties, two of which are currently parties to the present suit, extensively briefed this issue, largely making the same arguments also made in this suit.

(Doc. 53, p. 7.) Fund Litigation I was filed on August 15, 2002, with the Central District court's summary judgment in favor of Peabody rendered on August 23, 2005. As Heritage notes, the Fund never appealed the decision in Fund Litigation I, making the judgment in that case final (Doc. 92, pp. 4-5).

The second case, which Heritage calls "Christian County Litigation," was brought in the Circuit Court of Christian County, Illinois, entitled ***Illinois Mine Subsidence Ins. Fund v. Peabody Coal Co.*, Case No. 06-MR-10**. The Fund filed suit in this case on February 15, 2006. Defendant again asserted the

Construction Statute of Repose as a defense to bar the Fund's subrogated claims for mine subsidence against it. Summary judgment was entered by the state court on March 24, 2008, in favor of Defendant, also finding that the Fund's claims were barred by the Construction Statute of Repose. Although the Fund appealed this decision to the Illinois Appellate Court, it later voluntarily dismissed its appeal. Therefore, as with Fund Litigation I, Heritage points out that the judgment in Christian County Litigation is also final (Doc. 92, pp. 5-6).

Res judicata, which is also sometimes called "claim preclusion," acts as an affirmative defense barring "relitigation of a claim for relief decided on the merits in a previous suit involving the same parties or their privies." ***Simon v. Allstate Employee Group Medical Plan*, 263 F.3d 656, 658 (7th Cir. 2001) (citation omitted)**. For the doctrine of res judicata to apply, three elements must be met: (1) an identity of parties or their privies; (2) an identity of the causes of action; and (3) a final judgment on the merits. ***Cole v. Board of Trustees of the University of Illinois*, 497 F.3d 770, 772 (7th Cir. 2007)**. These requirements are the same under either federal or Illinois law. ***See, e.g., Hudson v. City of Chicago*, 889 N.E.2d 210, 213 (Ill. 2008)**. Collateral estoppel is typically known as "issue preclusion" and "bars the relitigation of an issue of law or fact that was litigated and decided in a prior case between the same parties or their privies." ***Simon*, 263 F.3d at 658 (citation omitted)**. For collateral estoppel to apply under federal law, four elements must be met: (1) the issue sought to be precluded must be the same as that involved in the prior action; (2) the issue

must have been actually litigated; (3) the determination of the issue must have been essential to the final judgment; and (4) the party against whom estoppel is invoked must be fully represented in the prior action. ***La Preferida, Inc. v. Cerveceria Modelo, S.A. de C.V.*, 914 F.2d 900, 905-06 (7th Cir. 1990)**.[1] Illinois law, which is basically the same as federal law, requires the following for collateral estoppel to apply: "(1) the issue decided in the prior adjudication is identical with the one presented in the suit in question; (2) there was a final judgment on the merits in the prior adjudication; and (3) the party against whom estoppel is asserted was a party or in privity with a party to the prior adjudication." ***Dunlap v. Nestle USA, Inc.*, 431 F.3d 1015, 1018 (7th Cir. 2005) (citing *Herzog v. Lexington Township*, 657 N.E.2d 926, 929-30 (Ill. 1995))**.

Heritage asserts that its defense here is more properly characterized as collateral estoppel, rather than res judicata and presents its argument on that basis, but does not completely abandon its res judicata argument, as "there is not always a bright line between the two defenses" (Doc. 92, p. 7, n.4). Regardless, the Court finds that neither defense applies here as the requirement that the parties of the current adjudication be identical to, in privity with, or fully represented in the prior adjudication(s).

---

[1] When the prior judgment was rendered in federal court, federal preclusion laws shall apply, even when the court was (or is) sitting in diversity. ***See Havoco of America, Ltd. v. Freeman, Atkins & Coleman, Ltd.*, 58 F.3d 303, 306 n. 6 & 7 (7th Cir. 1995)**.

As the Fund correctly points out, in this case, as in both Fund Litigation I and Christian County cases, it brought its intervening claim as a subrogee. The principle of equitable subrogation allows the subrogee to step "into the shoes of the one whose claim or debt it has covered and can only enforce rights the latter could enforce." ***Aetna Cas. & Sur. Co. v. Chicago Ins. Co.*, 994 F.2d 1254, 1257 (7th Cir. 1993)**; *see also **Dix Mut. Ins. Co. v. LaFramboise*, 597 N.E.2d 622, 624 (Ill. 1992)**. As the Seventh Circuit also noted on appeal in this matter, "the Fund reimburses the property insurer for the amount it paid to its insured, and the Fund is then subrogated to the rights of both the insured and the property insurer." ***Ambrosia Land Investments*, 521 F.3d at 780 (citing 215 ILL. COMP. STAT. 5/815.1(b))**. Therefore, in this case, the Fund was stepping into the shoes of both Ambrosia (formerly Wilke) and Federated. In Fund Litigation I, the Fund points out it was suing as subrogee of several insurance companies, none of which were Federated nor were any of the insureds Ambrosia (or Wilke). The same holds true in the Christian County litigation (Doc. 97, p. 1, n.1). Heritage opposes this rationale, arguing that the Fund was the real party in interest, seeking to recover on behalf of itself only and also that although a subrogee can assert the rights of the subrogor, it should not be exempt from the defense of preclusion, even if the subrogor would have been exempt (Doc. 105, p. 2). Yet, Heritage offers nothing in the way of legal authority to adequately support its argument. In fact, it appears there is nothing of precedential value which deals specifically with the issue of preclusion as applied

to a subrogee, especially a reinsurer. Thus, the Court must consider the basic principles of subrogation law.

Unlike Heritage suggests, it would make little sense to preclude the Fund from recovering money it is obligated by law to reimburse the mine subsidence insurers for mine subsidence damages paid to insureds simply because of the prior judgment of one district court or circuit court case. Although Heritage opines that the Seventh Circuit's decision in ***Ambrosia Land Investments, LLC v. Peabody Coal Co.*, 521 F.3d 778 (7th Cir. 2008)** will not preclude other property owners from successfully bringing a claim against the mine operators/owners for mine subsidence damage in the future (i.e., as they will not likely be barred by the Construction Statute of Repose), it wants the Court to believe that the Fund will forever be precluded from seeking reimbursement for the reinsurance money it must still provide under law for these future claims. ***See* 215 ILL. COMP. STAT. 5/801.1 - 5/817.1 (providing for mine subsidence insurance and establishing the Fund)**. This is nonsensical. As such, the Court must deny Heritage's Renewed Motion for Summary Judgment on Grounds Not Yet Decided (Doc. 91).

### 2. The Fund's Motion for Summary Judgment

Because the Court has determined that the Fund's claims are not precluded, it must now turn to the grounds upon which the Fund seeks summary judgment against Heritage (Doc. 90). As previously explained, the Fund moves for summary judgment, arguing that the uncontroverted facts establish a *prima facie*

case of Heritage's strict liability for mine subsidence damage. Heritage does not contest the Fund's assertion – in its Response, it only asserts the defense of collateral estoppel in attempt to bar Plaintiff's claims. As the Fund correctly states, there is an absolute right to subjacent support and therefore, a mining company will be strictly liable for failing to provide subjacent support, whether or not there was negligence involved, absent a release or waiver from the surface owner. ***See Ambrosia Land Investments*, 521 F.3d at 785 (citing *Mason v. Peabody Coal Co.*, 51 N.E.2d 285, 286 (Ill. App. Ct. 1943); *Wilms v. Jess*, 94 Ill. 464 (1880); *Tankersley v. Peabody*, 202 N.E.2d 498 (Ill. 1964); *Buis v. Peabody*, 190 N.E.2d 507 (Ill. App. Ct. 1963))**. The Fund also states that Heritage assumed the assets and liabilities of Perry Coal Company, the company that mined the St. Ellen Mine which the Fund asserts caused the mine subsidence damage to the warehouse owned by Wilke (and later, Ambrosia) (Doc. 90, p. 6). Although Heritage did not exactly "admit" this as the Fund suggests in its Motion, Heritage does not deny it in its Response either. Therefore, the Court will deem this an admission, pursuant to **Local Rule 7.1(c)**.

The Fund also contests Heritage's assertion that its claims are barred by the five-year Statute of Limitations, as set forth in **735 ILL. COMP. STAT. 5/13-205** (Doc. 90, p. 7). This statute allows one to bring suit to recover damages for injury to property "within 5 years next after the cause of action accrued." The Fund asserts that Illinois law holds that an action for damage to property due to mine subsidence does not accrue until the subsidence actually occurs, and not

when the mining which causes the subsidence occurred (Doc. 90, p. 7). ***West American Ins. Co. v. Sal E. Lobianco & Son Co., Inc.*, 370 N.E.2d 804, 806 (Ill. 1977) (citing *Savant v. Superior Coal Co.*, 125 N.E.2d 148 (Ill. App. Ct. 1955); *Wanless v. Peabody Coal Co.*, 13 N.E.2d 996 (Ill. App. Ct. 1938))**. Accordingly, the Fund believes the suit was filed within the limitations period, as it was initiated on April 21, 2005 and damage to the warehouse was not noticed until November 2000. The Fund further asserts that its intervenor claim accrued even later, as it did not pay the reinsurance amount until 2005. Again, Heritage does not contest this. Therefore, the Court finds in favor of the Fund regarding its summary judgment motion.

### III. <u>CONCLUSION</u>

For the reasons stated herein, the Court hereby **DENIES** defendant Heritage's Renewed Motion for Summary Judgment on Grounds Not Yet Decided (Doc. 91) and **GRANTS** intervening plaintiff the Fund's Motion for Summary Judgment (Doc. 89). As such, summary judgment is entered in favor of the Fund and against defendant Heritage in the amount of $350,000.00, plus interest.

**IT IS SO ORDERED**.

Signed this 10th day of June, 2009.

/s/     *David R Herndon*
**Chief Judge**
**United States District Court**